# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PROGRESSIVE NORTHERN INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 10-CV-566-GKF-PJC ) |
| PHYLLIS SAMPSON, | ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is Plaintiff's First Motion to Compel (Dkt. #44). The motion came on for hearing on July 13, 2011 with counsel for both sides present. After ruling from the bench on the interrogatories in question, the Court now addresses the remaining issue: whether to compel the production of Defendant Phyllis Sampson's ("Sampson") state and federal income tax returns.

Plaintiff Progressive Northern Insurance Company ("Progressive") brought this action seeking declaratory judgment in part that Sampson was not insured under her son's (non-party Dale Paterson) commercial automobile policy with Progressive, Policy No. 04557715-4 (the "Policy"), for injuries she sustained in an accident on November 20, 2006 while driving her vehicle, a 1996 Dodge van. Sampson has counterclaimed for breach of contract and bad faith breach under the Policy. (Dkt. #11). As the Dodge van was not a listed vehicle under the Policy, Sampson seeks underinsured/uninsured motorist benefits as a "relative" of insured Dale Paterson. Policy, Declarations Page (Dkt. #44-3). "Relative" is defined under the Policy as "any other person living in the household in which the named insured resides who is related to the named insured by blood, marriage or adoption, including a ward or foster child." Policy, General

Definitions ¶13 (Dkt. #21-4).

The request at issue is as follows:

**(C) REQUEST FOR PRODUCTION NO. 14.** Please produce all of Your income tax returns, both State and Federal, including all Schedules thereto, attachments and amendments for the five (5) years immediately proceeding the service of these Requests.

Progressive asserts that these tax returns are relevant to Sampson's claim for "lost earning capacity" and her claim that she was residing in her son's home at the time of the accident as the returns identify her residence and whether she has paid interest on her home mortgage, etc.

Sampson has no objection to furnishing only the address information on her tax returns for 2006 and 2007. She, however, contends that the tax returns are irrelevant to her claim for loss of earning capacity, citing *Conwed Corp. v. Union Carbide Corp.*, 443 F.3d 1032, 1043-44 (8th Cir. 2006)("[L]oss of future earning capacity does not require specific proof of actual earnings either before or after the injury. . . . This is because the plaintiff need only prove a loss of earning capacity, that is, that an impairment in his or her power to earn a living was reasonably certain to occur as a result of the injuries."); *King v. City of Guymon*, 523 P.2d 1154, 1160 (Okla.Ct.App. 1974)("[T]he question is not whether an actual loss of 'earnings' has been shown, but whether proof there be of permanent disability implying loss of 'earning capacity.' The distinction between the two detriments is substantial."); and *Complete Auto Transit, Inc. v. Reese*, 425 P.2d 465, 469 (Okla. 1967)("The text rule, 22 Am.Jur.2d, Damages s 92, states that an element of damages for impairment of a plaintiff's earning ability is the decrease in earning capacity. The recovery is for injury to the capacity to earn, and not for loss of earnings. Upon this basis an unemployed plaintiff is entitled to recover for loss of earning capacity, despite inability to show

specific loss of earnings.").

     Progressive replies that Sampson has conceded the tax returns are relevant as to her residence, at least for the years of 2006 and 2007. Progressive, however, takes issue with Sampson's objection to the relevance of the returns to her claim of loss earning capacity. It notes that although *Reese* states in dicta that an unemployed plaintiff may recover for loss of earning capacity, it never mentions the discoverability of tax returns. Neither does *King* address the discoverability of tax returns. Rather, *King* addresses the admissibility of annuity rate tables as evidence of projected loss of earnings, finding them admissible to estimate the extent of earning capacity reduction as distinguished from actual loss of earnings. Progressive cites the following in support of the discoverability of tax returns to show loss of earning capacity: *Ronald C. Fish v. Watkins*, 2006 WL 411302, *1 (D. Ariz., February 17, 2006)(finding that there was a "compelling need" for Plaintiff business' tax return to establish its overhead in the determination of the measures of damages and its confidentiality was protected by the standing protective order); *Vondrak v. City of Las Cruces*, 2009 WL 1300943, 8 (D.N.M., March 30, 2009)(ordering the production of Plaintiff's tax and business records in an excessive force case as "Defendants were not required to take the word of [Plaintiff's] expert on damages,"who relied on the returns, and the documents contained "discoverable information regarding [the expert's] methodology for determining lost earnings or lost earning capacity, and the data to test that methodology."); *Quinones v. Pennsylvania General Ins. Co*, 804 F.2d 1167, 1169-70 (10th Cir. 1986)(upholding the trial court's denial of jewelry store owner's testimony about how much he paid his full-time watchmaker as evidence of Plaintiff's loss of earning capacity while allowing Plaintiff's tax returns for three years to be admitted).

Whether or not characterized as a "qualified privilege," federal and state courts recognize the confidential nature of tax returns and disfavor disclosure. *Cattegno v. Pricewaterhousecoopers, LLP*, 205 F.R.D. 70, 72 (D.Conn.2001)(recognizing a "qualified privilege" for tax returns in civil discovery); *Eastern Auto Distributors, Inc. v. Peugeot Motors of America,* 96 F.R.D. 147, 148-49 (D.Va. 1982)(A "'qualified' privilege emerges from the case law that disfavors the disclosure of income tax returns as a matter of general federal policy."); *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993) ("Not only are the taxpayer's privacy concerns at stake, but unanticipated disclosure also threatens the effective administration of our federal tax laws given the self-reporting, self-assessing character of the income tax system."); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 190-91 (C.D.Cal.2006)("Tax returns and related documents 'do not enjoy an absolute privilege from discovery.' Nevertheless, a public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns."(citations omitted)); *Stone v. State Farm Mutual Automobile Ins. Co.*, 185 P.3d 150 (Colo. 2008)(The "general reluctance of courts to compel the disclosure of tax returns is due to 'both the private nature of the sensitive information contained therein' and 'the public interest in encouraging the filing by taxpayers of complete and accurate returns.'").

Accordingly, to determine whether to compel production of tax returns, the Court applies the two-prong test[1] adopted by the majority of federal courts: "1) a finding that the returns are

---

[1] This test is often referred to as the *Cooper/Eastern Auto* test. *See Cooper v. Hallgarten & Co.*, 34 F.R.D. 482, 485-86 (S.D.N.Y. 1964) and *Eastern Auto Distributors, Inc. v. Peuguot Motors of America, Inc.*, 96 F.R.D. 147, 149 (E.D.Va. 1982).

relevant to the subject matter of the action; and 2) there is a compelling need for the tax returns because the information is not otherwise readily obtainable." *Hawkins v. South Plains Int'l Trucks, Inc.*, 139 F.R.D. 679, 681-82 (D. Colo. 1991); *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 539 (D.Kan.2006) (same); *Gattegno*, 205 F.R.D. at 71-72 (same); *Carmody v. Village of Rockville Ctr.,* 2007 WL 2042807, at *2 (E.D.N.Y. July 13, 2007)(same); *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, 2001 WL 34079319, *3 (S.D.Fla. November 1, 2001)(same); *Stone v. State Farm Mutual Automobile Ins. Co.*, 185 P.3d 150, 159 (Colo. 2008) (same).

As noted above, Sampson has agreed to provide the address information in her 2006 and 2007 tax returns,[2] but maintains the rest is irrelevant to her claim for loss of earning capacity. Having reviewed the applicable case law, the Court disagrees. Although the cases support the proposition that a party does not have to provide proof of income before and after the injury to

---

[2] Although Sampson's address is of course relevant, the Court does question why Progressive needs the tax returns for address information. It already has Sampson's admission under oath that she put down either PO Box 117 (which she also admitted was the same as the 503 [sic] physical address) or the 502 Oak Street address on her tax returns:
> Q. When you pay taxes since 1976, has the address for your taxes always been to 502 Oak Street address?
> A. I'm not sure about that. I don't know whether I put the Post Office Box or the 502. I'm not sure.
> Q. So it would be Post Office Box 117 or the 502 address?
> A. Yes.

(Dkt. #44-2, pp. 51-52). Sampson further attested at her Examination under Oath ("EUO") on July 20, 2010 that she lived in her house at 502 Oak Street in Jennings, Oklahoma from 7/1976 - 9/2006 when she moved in with her son Dale at his home at 316 Oak Street because she was distraught about the break-up of her marriage in 8/2006. (Dkt. #44-2, p. 46). She moved back into her house in March or April 2007 because Dale was engaged to be married and she "figured [her] presence as a mother-in-law was not warranted anymore." (Dkt. #44-2, pp. 46-47). She stated that during the time she was at Dale's, she (sometimes with help from Dale) continued to pay for the utilities at 502 Oak Street and, on weekends, she would go back to her house to spend a night "because his girlfriend was over and I would get out of the way." (Dkt. #44-2, p. 48).

5

establish loss of earning capacity, they do not stand for the proposition that income is not *relevant* to a determination of earning capacity so as to preclude *discovery* of the change in income through income tax returns. The Court, therefore, finds that the first prong has been met.[3]

However, as neither party addressed the second prong, the Court cannot determine whether Sampson's change in income before and after the injury is readily obtainable from other sources; *e.g.*, the availability of W-2s from the family business, the Game Room.

Both parties conceded at the hearing that Sampson's income tax returns for 2006 and 2007 are sufficient. Accordingly, the Court **GRANTS** the motion and directs Sampson to provide Progressive with her federal and state income tax returns for 2006 and 2007 on or before July 28, 2011.

IT IS SO ORDERED, this 14th day of July, 2011.

_____
Paul J. Cleary
United States Magistrate Judge

---

[3] The Court does not address whether the returns would be admissible as that is an issue for the trial court, if necessary.